```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                           BECKLEY
```

**MICHAEL ALLEN KOKOSKI,**

       **Petitioner,**

**v.**                            **Case No. 5:06-cv-00849**

**CHARLES T. FELTS, Warden,**

       **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

This civil action was opened to address Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 concerning the Bureau of Prisons' ("BOP") miscalculation of his projected statutory release date, the BOP's alleged denial of Petitioner's participation in the Residential Drug Abuse Program ("RDAP") at FCI Beckley, and the alleged denial of a sentence reduction for Petitioner under 18 U.S.C. § 3621(e). This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

In addition to Petitioner's section 2241 petition, the following motions are pending: Petitioner's Letter-Form Motion for an Order in the Nature of an Emergency Injunction (# 2), Petitioner's Petition for an Emergency Restraining Order (# 21), Petitioner's Letter-Form Motion for Judgment and Order for His

Immediate Release (# 23), Petitioner's Letter-Form Motion for Judgment (# 26), Petitioner's Letter-Form Motion for Judgment on the Pleadings (# 28), Petitioner's Motion for Judgment on Certain Grounds (# 36), and Petitioner's Motion for Judgment (# 38). The various Motions for Judgment all assert that Petitioner had a settled expectation of early release under 18 U.S.C. § 3621(e), and that he is entitled to a writ of habeas corpus to effect that early release.

## PROCEDURAL HISTORY AND PETITIONER'S RELEVANT CLAIMS

A brief discussion of Petitioner's criminal history is warranted. On September 20, 1994, following a guilty plea to one count of employing a person under eighteen years old to distribute LSD, in violation of 21 U.S.C. §§ 841(a)(1) and 861, Petitioner was sentenced to 144 months in prison, followed by a six-year term of supervised release. Petitioner was also ordered to pay a $5,000 fine. (United States v. Kokoski, Case No. 5:92-cr-00090 (S.D. W. Va.)(Hallanan, J.)(hereinafter "the LSD conviction").

On April 28, 1996, while serving his 144-month sentence, Petitioner walked away from the satellite prison camp at FCI Beckley and remained at large until he was arrested in the State of Montana on unrelated charges on January 1, 1999. Petitioner pled guilty to a criminal mischief charge in Montana, and received a six-month (180-day) suspended sentence. Petitioner was then returned to federal custody.

Petitioner was subsequently charged with escape, in violation of 18 U.S.C. § 751(a), for escaping from the satellite prison camp at FCI Beckley. <u>United States v. Kokoski</u>, 5:96-cr-00064 (S.D. W. Va.)(Chambers, J.). Petitioner pled guilty to the escape charge and was sentenced to 37 months in prison, which was to run <u>consecutive to</u>[1] his earlier sentence, followed by a three-year term of supervised release. (<u>Id.</u>, Judgment in a Criminal Case, # 92)(hereinafter "the escape conviction").

Petitioner unsuccessfully appealed both of his criminal judgments and has filed numerous collateral motions and petitions, which have also been found to lack merit.

On October 2, 2006, Petitioner filed the instant section 2241 habeas corpus petition (# 1) and a "Motion for an Order in the Nature of an Emergency Injunction" (# 2). Since that time, Petitioner has filed numerous additional documents and motions in this matter.[2]

---

[1] The judgment order in Petitioner's escape case states that the sentences are consecutive. Subsequent proposed findings and recommendations submitted in Petitioner's post-conviction proceedings stated that the sentences were concurrent, but that was a typographical error that went uncorrected. Such an error does not supersede the criminal judgment order.

[2] In some of the documents filed by Petitioner, Petitioner addresses matters related to allegations that the government officials involved in his prior criminal proceedings engaged in a fraud upon the court and that the judgments for his LSD conviction and escape are therefore void. Petitioner also asserts that his 37-month sentence for escape was to run concurrent to, not consecutive to, his 144-month sentence. As discussed in the prior footnote, it is clear from Petitioner's

As noted in Respondent's Response to the undersigned's Order to Show Cause, Petitioner's section 2241 petition argues: (1) that the BOP erroneously calculated his projected statutory release date; (2) that he is entitled to prior custody credit for the time period beginning January 1, 1999 and ending June 29, 1999; (3) that he should have been immediately placed in the RDAP upon his arrival at FCI Beckley, and (4) that he is entitled to early release under 18 U.S.C. § 3621(e).

Since the time that Respondent responded to the Order to Show Cause, Petitioner has been credited with 180 days of prior custody credit, related to the time period from January 1, 1999 to June 29, 1999, which was the time period of Petitioner's suspended state sentence in Montana. Thus, that claim is now moot. The BOP has also admittedly miscalculated Petitioner's projected release date on more than one occasion. However, that fact, alone, does not entitle Petitioner to habeas corpus relief. An explanation of the events leading up to Petitioner's current sentence calculation is in order.

Petitioner alleges that, in October of 2000, while he was incarcerated at FCI Manchester, in Kentucky, he was told that his

---

Judgment of Conviction in his escape case that the sentences were ordered to run consecutively.
    This court has exhaustively addressed these claims in several other proceedings and determined that they lack merit. Thus, to the extent that Petitioner is again trying to assert these claims, the undersigned will not address them herein.

projected statutory release date was December 27, 2008. (# 1 at 4). As discussed in the Declaration of Sandra M. Gregg, attached as Exhibit 2 to Respondent's Response to the Order to Show Cause (# 17-3, Ex. 2), when the BOP updates a sentence computation, the prior computation is not held in the computer system. Thus, neither party herein is in possession of documentation concerning this calculation, so the undersigned must accept that representation without proof.

Petitioner was subsequently transferred to FCI Victorville I, in California, where he alleges that he was informed that his sentence had been miscalculated at FCI Manchester. (# 1 at 4; # 6 at 1). According to documentation offered by both parties, on or about October 17, 2005, the authorities at FCI Victorville I calculated Petitioner's projected statutory release date as December 5, 2007. (Id., Ex. 2, Attach. A; # 16 at 8).

Petitioner alleges that, relying on that sentence computation, he withdrew from the Life Connections Program at FCI Victorville I, and requested a transfer to another facility to participate in the RDAP. (# 1 at 4-5; # 6 at 2, 4). Petitioner was transferred to FCI Beckley on or about December 22, 2005. (# 1 at 5; # 6 at 4).

Petitioner's Declaration in support of his section 2241 petition alleges that he was "pre-approved to receive up to 12 months to be deducted from my federal sentence(s), pursuant to Title 28 [sic; 18], U.S.C. § 3521 [sic; 3621]" and that he

5

"reasonably expected to receive early release to a community corrections center halfway house immediately upon completion of this pre-release program . . . ." (# 6 at 2-3). Petitioner further asserts that "the warden was required to place me in this program immediately upon my arrival at FCI Beckley, pursuant to Title 18, U.S.C. [§] [3621] and program statement 5100.07 and/or otherwise." (Id. at 3). Petitioner asserts that he "reasonably relied upon the 2005 sentence computation" and that "Respondent and the Director of the BOP remains bound by this initial determination with respect thereto." Petitioner wants a declaratory judgment to that effect. (# 5 at 1).

However, in early January 2006, after Petitioner had been received at FCI Beckley, Petitioner was again told that his sentence calculation was wrong. At that time, he was told that his projected statutory release date was November 24, 2008. (# 1 at 5; # 6 at 4).

According to Respondent, it appears that the miscalculation of Petitioner's projected release date, as given at FCI Victorville I, occurred because the time period between June 30, 1999 and June 21, 2000 had been credited against both of his federal sentences, when it should only have been credited against his first sentence. (# 17 at 10).

According to Respondent's Response to the Order to Show Cause, because of the change in Petitioner's projected statutory release

6

date, as of December 20, 2006, Petitioner was number 50 on the waiting list for the RDAP at FCI Beckley. 18 U.S.C. § 3621(e)(1)(C) provides that "priority for such treatment [is] accorded based upon an eligible prisoner's proximity to release date." Thus, there were other prisoners with an earlier projected release date, who had priority over Petitioner for the RDAP treatment.

On or about February 21, 2007, Petitioner was notified by officials at FCI Beckley that his sentence was again being recalculated, based on his receipt of 180 days of prior custody credit. Thus, Petitioner's current projected release date is May 28, 2008.

## ANALYSIS

**A. Exhaustion of administrative remedies.**

In his Response to the Order to Show Cause, Respondent asserted that Petitioner had not fully exhausted his administrative remedies concerning his assertion that he should have been placed in the RDAP immediately upon his transfer to FCI Beckley, and that he should receive a sentence reduction for participation in the RDAP. (# 17 at 5-6). Accordingly, Respondent argued that Petitioner should be required to exhaust all of the available remedies and that his present petition should be dismissed. (Id. at 6).

It is clear that Petitioner did not file his initial Request for Administrative Remedy concerning the RDAP issue until October 12, 2006, ten days after he filed his section 2241 petition in this case. (# 32 at 9). Therefore, Respondent correctly asserts that Petitioner had not exhausted his administrative remedies at the time he filed the instant habeas corpus petition.

On March 13, 2007, Petitioner filed a "Motion to Admit Additional Evidence of Exhaustion of Administrative Remedies Concerning RDAP Completion" (# 32)[3]. In that motion, Petitioner detailed his attempts to exhaust the BOP's administrative remedies concerning the RDAP issue. From the documents provided by Petitioner, it appears that he continued to attempt to exhaust his administrative remedies, but was forestalled by the Regional Director's delay in responding to his regional appeal (BP-10) until January 22, 2007.[4]

In light of that delay, and the fact that the BOP has once again re-calculated Petitioner's projected release date, the undersigned proposes that the presiding District Judge **FIND** that it would be futile for Petitioner to continue to attempt to exhaust additional administrative remedies concerning the RDAP issue. Accordingly, to the extent that Respondent has requested the

---

[3] The undersigned granted this motion by separate order.

[4] The undersigned is unaware of whether Petitioner has now exhausted his appeal to the Central Office, the final level of administrative remedies.

8

dismissal of Petitioner's petition for failure to exhaust administrative remedies, it is respectfully **RECOMMENDED** that the request for dismissal be **DENIED**.

> **B. Petitioner has not been wrongfully denied participation in the RDAP or denied a right to a sentence reduction.**

Respondent further asserts that Petitioner's request for immediate placement in the RDAP and his further request for a twelve-month sentence reduction should be denied. Specifically, Respondent's Response to the Order to Show Cause states:

> Contrary to Petitioner's claims[,] the BOP is not "required...to place petitioner in the RDAP immediately upon his arrival at FCI Beckley," nor is he "entitled" to early release for participating in the RDAP program.

(# 17 at 11). Respondent argues that, even if Petitioner were to successfully complete the RDAP, he would not be <u>entitled</u> to early release. Respondent cites to 18 U.S.C. § 3621(e)(2)(B), which provides:

> Period of custody. - The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program **may** be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve. (Emphasis added).

(# 17 at 12). Respondent further argues that, "Petitioner's request for a year off of his sentence simply because he expected it is also without merit and should be denied." (<u>Id.</u>)

In his Traverse, Petitioner asserts that he was determined to be eligible to participate in RDAP <u>and</u> determined that he would

also be eligible for up to a 12-month sentence reduction in 2004, while he was housed at FCI Manchester. (# 19 at 3). Petitioner further asserts that the district court recommended that he participate in the RDAP at his sentencing and, thus, the court and Petitioner "took this eligibility for a sentencing reduction into consideration while deciding on whether to plead guilty, and forego trial, and while determining an appropriate sentence . . . ." (Id. at 4). Petitioner asserts that "the Court must focus on the change in the (Petitioner's) eligibility to receive a lessor [sic; lesser] sentence . . . regardless of whether (he) would actually have received the lessor [sic; lesser] sentence; in deciding this Case." (Id. at 5). Thus, Petitioner appears to be relying upon principles of promissory or equitable estoppel in arguing that the BOP should be bound by the December 5, 2007 projected release date.

At present, Petitioner's projected statutory release date is May 28, 2008. Petitioner cannot successfully complete the RDAP and still be able to complete up to six months of community confinement prior to that date. In fact, when Petitioner was informed of the latest recalculation of his sentence, he was encouraged to withdraw from the RDAP, in which he had finally been enrolled. Petitioner alleges:

> 15. On or about February 22, 2007, Petitioner was informed, in writing, that Respondent could allow him to complete the March 19, 2007 cohort of RDAP; which is scheduled to graduate January 4, 2008. However, to complete this cohort of RDAP, Petitioner would necessarily have to waive his eligibility to receive up

> to six (6) months placement in a community correctional
> center halfway house or home confinement ("CCC") program.
> That he would otherwise be eligible to receive, on, or
> about, November 30, 2007, i.e. without finishing the ten
> (10) month residential component of RDAP, in prison; as
> opposed to January 5, 2008, or later, eligibility for
> placement in such transitional CCC placement, i.e., in
> consequence for "finishing" RDAP. Without the ben[e]fit
> of ever possibly "completing" RDAP. <u>Supra.</u>

(# 35 at 6)[5]. Petitioner further alleges that:

> 16. On or about February 26, 2007, Petitioner discussed
> the foregoing circumstances with Respondent's agent
> Barbra Fox, Unit Manager, at the institution in Beaver,
> West Virginia. Who instructed Petitioner to withdraw
> from RDAP waiting status and to enrole [sic; enroll] in
> a 100 hour non-residential drug education class in order
> to preserve his eligibility to receive the full six (6)
> months CCC halfway house or home confinement placement.
> or, alternatively to waive the six (6) month CCC
> eligibility.
>
> 17. Additionally, at that time, Barbra Fox told
> Petitioner that he was no longer eligible to participate
> or finish RDAP, under any circumstances. As Petitioner
> did not have more than fifteen (15) months remaining on
> his federal sentence, from March 19, 2007 unto May 28,
> 2008. And, therefore, Petitioner would not be permitted
> to participate in RDAP at all, under any circumstances.
>
> 18. Accordingly, Petitioner presented Barbra Fox with a
> written Inmate Request to Staff, on or about February 27,
> 2007. Requesting [to] withdraw from RDAP in order to
> complete the 100 hour drug education class. As
> instructed by Respondent's agent. <u>Supra.</u>

(<u>Id.</u> at 8).

---

[5] These allegations are contained in Petitioner's Motion for Court to Take Judicial Notice of Facts Not In Dispute (# 35). Although the court declined to take judicial notice of these allegations, the undersigned will acknowledge these allegations as being in support of Petitioner's claims raised in his habeas corpus petition.

Based upon these facts, Petitioner asserts that his eligibility to receive the one-year sentence reduction has been "prospectively altered and revoked" due to no fault of Petitioner, and further asserts that his rehabilitation programming has been "frustrated and interfered with." (# 26 at 3).

First and foremost, as noted by Respondent in his Response to the Order to Show Cause, this federal court cannot require the BOP to use an incorrect sentence computation to determine a prisoner's projected release date, or allow an inmate to be prematurely released based upon a computation error. See Hawkins v. Freeman, 195 F.3d 732 (4th Cir. 1999)(finding that the BOP did not violate the petitioner's constitutional rights by requiring him to serve his undischarged federal sentence after being erroneously released). Thus, the court cannot compel the BOP to use the December 5, 2007 projected release date. Accordingly, Petitioner's requests that the BOP be bound by that projected release date must be denied.

Moreover, even if Petitioner could complete the RDAP, the statute governing the substance abuse treatment program gives discretion to the BOP to determine whether a prisoner should be granted any reduction in sentence, let alone a full 12 months. 18 U.S.C. § 3621(e)(2)(B). Thus, Petitioner has not been denied any right to a sentence reduction, and the court cannot declare that Respondent is in violation of the statutory requirements.

Therefore, to the extent that Petitioner's documents in this case request a writ of habeas corpus to reduce Petitioner's sentence based on his eligibility to participate in the RDAP, such requests must also be denied.

Turning to whether Petitioner has been denied any right to rehabilitation, the undersigned first notes that there is no constitutional right to rehabilitation. See Marshall v. United States, 414 U.S. 417 (1974)(in context of drug addiction, there is no fundamental right to rehabilitation after conviction). Therefore, Petitioner cannot demonstrate a violation of his constitutional rights by the conduct of the BOP.

Furthermore, 18 U.S.C. § 3621(b) provides that "[t]he Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." Because Petitioner is able to participate in the 100 hour non-residential drug treatment program, he cannot demonstrate that the BOP is in violation of this statutory provision.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that Petitioner cannot show that he is "in custody in violation of the Constitution, or laws, or treaties of the United States." Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (# 1) and **DENY**

13

Petitioner's various Motions for Judgment (## 23, 26, 28, 36 and 38).

### C. Plaintiff's Motions for Injunctive Relief.

Also pending are Petitioner's Letter-Form "Motion for an Order in the Nature of an Emergency Injunction" (# 2) and Petitioner's "Petition for an Emergency Restraining Order" (# 21). In his "Motion for an Order in the Nature of an Emergency Injunction" (# 2), Petitioner sought placement in the September 2006 cohort of the RDAP. In his "Petition for an Emergency Restraining Order" (# 21), Petitioner requests that the district court prevent the BOP from transferring him to another correctional facility pending during the pendency of this civil action.

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of both Preliminary Injunctions and Temporary Restraining Orders ("TRO"). The rule requires that, before either a TRO or a Preliminary Injunction may be ordered, the applicant must demonstrate immediate and irreparable harm. Fed. R. Civ. P. 65. In light of the undersigned's proposed finding that Petitioner is not entitled to habeas corpus relief, the undersigned further proposes that the presiding District Judge **FIND** that Petitioner cannot show immediate or irreparable harm by the denial of these motions.

Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's Letter-Form "Motion for an Order

14

in the Nature of an Emergency Injunction" (# 2) and Petitioner's "Petition for an Emergency Restraining Order" (# 21).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and counsel of record.

<pre>
    June 26, 2007                          Mary E. Stanley
         Date                        Mary E. Stanley
                                     United States Magistrate Judge
</pre>